SHELBY MUTUAL INSURANCE COMPANY *v.* DENNIS DELLA GHELFA ET AL.
(12753)
(12774)

HEALEY, SHEA, DANNEHY, SANTANIELLO and CALLAHAN, Js.

Argued April 10—decision released July 29, 1986

*Wesley W. Horton,* with whom were *Paul R. Griffin* and, on the brief, *Kimberly A. Knox,* law student intern, for the appellants (defendants).

*Marc N. Needelman,* for the appellee (plaintiff).

SANTANIELLO, J. This is an appeal, after certification, from a judgment of the Appellate Court reversing the decision of the Superior Court which granted the plaintiff insurer summary judgment in the amount of $5000. We granted certification to review the Appellate Court's judgment that: (1) a no-fault automobile

insurer that has paid more than $5000 to its insured as part of extended reparations coverage under the No-Fault Motor Vehicle Insurance Act (the act), General Statutes §§ 38-319 through 38-351, was entitled to full reimbursement upon the insured's recovery from a third party tortfeasor; and (2) a no-fault insurer under the pre-1981 version of the act may enforce its right to reimbursement and right to a lien against the insured's attorney where the attorney received the funds on behalf of the insured. We affirm the judgment of the Appellate Court.

The decision of the Appellate Court fully sets forth the underlying facts and circumstances. *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 3 Conn. App. 432, 434–35, 489 A.2d 398 (1985). As a result of an automobile accident occurring in 1975, the defendant Dennis Della Ghelfa received $11,989.02 under his no-fault automobile insurance policy with the plaintiff, Shelby Mutual Insurance Company. The plaintiff was required by state insurance regulations then in effect to offer, in addition to the statutory minimum of $5000, optional increased coverage of $10,000, $15,000 and $25,000 as reparations benefits. Regs., Conn. State Agencies § 38-330-1. The defendant had purchased coverage in an amount exceeding the $11,989.02 which he had received as reparations benefits. After the plaintiff paid Della Ghelfa, it gave him and his attorney, the defendant Zbigniew S. Rozbicki, notice of its statutory right of reimbursement under General Statutes (Rev. to 1979) § 38-325. On October 4, 1979, Della Ghelfa, represented by Rozbicki, obtained a judgment of $18,000 against a third party tortfeasor for a claim arising out of the accident. The recovery was paid to Rozbicki who in turn disbursed the proceeds to Della Ghelfa.

The plaintiff, by complaint dated April 15, 1980, filed this action seeking reimbursement of the insurance benefits paid to Della Ghelfa. The suit was brought in

two counts, one alleging that Della Ghelfa wrongfully retained the amount recovered in the third party action and one alleging that Rozbicki wrongfully turned the money over to Della Ghelfa. The plaintiff claimed that under General Statutes (Rev. to 1979) § 38-325 (b) it possessed a statutory right of reimbursement and that the defendants failed to honor that lien. Rozbicki moved to strike the complaint on the ground that § 38-325 (b) did not create a lien against him as Della Ghelfa's attorney, but the court, *O'Donnell, J.,* denied his motion. Rozbicki then filed twenty-two special defenses which the plaintiff thereafter moved to strike. The court, *Aspell, J.,* ruled that twenty-one of the twenty-two special defenses did not state legally sufficient grounds to defeat the plaintiff's claim and granted the motion to strike as to those defenses. As to the remaining defense, that the act limited the plaintiff's recovery to $5000, the court denied the motion to strike. The plaintiff later moved for summary judgment in the amount of $11,989.02, the full amount of the benefits paid to Della Ghelfa. The court, *Satter, J.,* granted the plaintiff's motion but limited the recovery to $5000 on the ground that the lien created by § 38-325 (b) is limited to a maximum of $5000 by virtue of § 38-320 (a) and (d).

The plaintiff appealed the judgment of the trial court to the Appellate Court claiming error in the court's limitation of recovery. Rozbicki cross appealed claiming that the court erred in denying his motion to strike the plaintiff's complaint, in granting the plaintiff's motion to strike all but one of his twenty-two special defenses, and in granting the plaintiff's motion for summary judgment. The Appellate Court found error on the plaintiff's appeal and determined that summary judgment should have been granted in the full amount of $11,989.02. The court, however, also found that the trial court should not have stricken one of Rozbicki's special defenses and found error in part on the cross

appeal. The court therefore ordered that the trial court's "judgment [be] set aside and the case [be] remanded with direction to render judgment for the plaintiff in the amount of $11,989.02 against the defendant Della Ghelfa, and against the defendant Rozbicki unless he establishes his nineteenth special defense in a hearing limited to that issue." *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* supra, 450.

We granted certification to review the judgment of the Appellate Court that the plaintiff was entitled to recover the full amount of benefits paid to Della Ghelfa and that the plaintiff could assert its statutory right to reimbursement against Rozbicki.[1] "In this appeal the focus of our review is not the judgment of the Superior Court but of the Appellate Court. We do not hear the appeal de novo. The only questions we need consider are those squarely raised by the petition for certification and the appellee's preliminary statement of issues, and we will ordinarily consider these issues in the form in which they have been framed in the Appellate Court. See Practice Book §§ 3012 (a), 3154; *State* v. *Beckenbach,* 198 Conn. 43, 47, 501 A.2d 752 (1985); *State* v. *Torrence,* 196 Conn. 430, 433, 493 A.2d 865 (1985)." *Petrowski* v. *Norwich Free Academy,* 199 Conn. 231, 234, 506 A.2d 139 (1986).

I

We turn first to the issue concerning the limitation on reimbursement. The Appellate Court held "that where the insurer has paid benefits for economic loss in excess of $5000 pursuant to increased coverage which it was required to provide by a regulation of the insurance commissioner, the entire amount of those benefits paid constitutes 'basic reparations benefits'

---

[1] Given our narrow scope of review, we do not consider the merits of the Appellate Court's decision reversing the trial court's order striking the nineteenth special defense.

and is subject to the reimbursement and lien rights created by § 38-325 (b)." *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* supra, 437. We agree with the Appellate Court's interpretation of the act.

Connecticut's no-fault automobile insurance provisions require the no-fault insurer "to pay, without regard to fault, basic reparations benefits under a uniform separately identifiable coverage of five thousand dollars per person per accident for economic loss . . . ." General Statutes § 38-320 (a).[2] "Basic reparations insurers may offer optional added reparations coverages providing other benefits as compensation for injury" and may be required by the insurance commissioner to offer specific optional added reparations coverages. General Statutes § 38-330.[3] "Whenever a person who receives basic reparations benefits for an injury recovers damages . . . the insurer is entitled to reimbursement from the claimant *to the extent that said basic reparations benefits have been paid* and shall have a lien on the claimant's recovery to such extent." (Emphasis added.) General Statutes (Rev. to 1979)

---

[2] General Statutes § 38-320 (a) provides: "The owner's insurer is liable to pay, without regard to fault, basic reparations benefits under a uniform separately identifiable coverage of five thousand dollars per person per accident for economic loss resulting from injury arising out of the ownership, maintenance or use of a private passenger motor vehicle as a motor vehicle, subject to the provisions of this chapter."

[3] General Statutes § 38-330 provides: "Basic reparations insurers may offer optional added reparations coverages providing other benefits as compensation for injury or harm arising from the ownership, maintenance or use of a private passenger motor vehicle, including loss excluded by limits on funeral and burial expenses, and loss excluded by limits on work loss and survivor's loss. The insurance commissioner may adopt rules requiring that specific optional added reparations coverages be offered by insurers writing basic reparations insurance. Added reparations coverages are not limited to injuries occurring within this state, but may be limited to injuries occurring within the United States of America, its territories and possessions and Canada."

§ 38-325 (b).[4] "Basic reparations benefits" is defined as "benefits reimbursing persons suffering economic loss through injury arising out of the ownership, maintenance or use of a private passenger motor vehicle . . . ." General Statutes § 38-319 (k). No monetary limit is given in the statutory definition, but § 38-320 (d) provides that "[t]he maximum amount of basic reparations benefits payable for all economic loss resulting from injury . . . shall not exceed five thousand dollars . . . ."[5]

The Appellate Court found that the term "basic reparations benefits" as used in § 38-325 (b) includes not only the first $5000 of coverage, but also payments made pursuant to extended coverage purchased under § 38-330. The court reasoned that the legislative history and the basic purposes of the act indicate that the legislature sought to provide insurers with reimbursement for all payments made under the obligations imposed on them by the act. Further, the court noted that an interpretation limiting the lien to $5000 "would lead to difficult and bizarre results . . . ." *Shelby Mutual Ins. Co.* v. *Della Ghelfa*, supra, 443. The defend-

---

[4] At the time the plaintiff's lien attached, General Statutes (Rev. to 1979) § 38-325 (b) provided: "Whenever a person who receives basic reparations benefits for an injury recovers damages from the owner, registrant, operator or occupant of a private passenger motor vehicle with respect to which security has been provided under this chapter or from a person or organization legally responsible for his acts or omissions, the insurer is entitled to reimbursement from the claimant to the extent that said basic reparations benefits have been paid and the insurer shall have a lien on the claimant's recovery to such extent."

[5] General Statutes § 38-320 (d) provides: "The maximum amount of basic reparations benefits payable for all economic loss resulting from injury to any one person as the result of any one accident shall not exceed five thousand dollars per person regardless of the number of insurers involved. If two or more insurers are liable to pay benefits for such an injury, any insurer paying the benefits due shall be entitled to recover from each of the other insurers an equitable pro rata share of the benefits paid and expenses incurred in processing the claim."

ants claim that the language of § 38-320 (a) and (d) makes it clear that the legislature intended the § 38-325 (b) lien to be limited to the payment of $5000. Relying on the well established rule of statutory construction that when a statute is unambiguous, further inquiry into its background, history, objectives and underlying policy is unnecessary; see *The B. F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 8, 490 A.2d 991 (1985); they argue that the Appellate Court's analysis and subsequent conclusion were erroneous.

We cannot agree with the defendants that the language of the act is absolutely clear. We affirm the conclusion of the Appellate Court that an inquiry into the history and purpose of the act is necessary. In interpreting a particular provision like § 38-325 (b), a reviewing court must, as far as possible, reconcile its wording with other statutes, especially those enacted as part of the same legislation, in order to render an overall reasonable interpretation. *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Dukes* v. *Durante,* 192 Conn. 207, 214–15, 471 A.2d 1368 (1984). In this case, the apparent limitation on insurer liability established in § 38-320 (a) and (d) does not foreclose the possibility that insurers will be obligated to pay more than $5000 as part of extended reparations benefits under § 38-330. Thus, the limitation provided in §§ 38-320 (a) and (d) does not make it absolutely clear that the lien created by § 38-325 (d) is limited to $5000. Furthermore, "basic reparations benefits" is defined in § 38-319 (k) not in terms of amounts paid, but in terms of coverage, making it entirely reasonable to conclude that such benefits are not limited to $5000.

We also affirm the conclusion of the Appellate Court that the history and scheme of the act indicate a legislative intent to create a lien in favor of the insurer for the entire amount paid in reparations benefits. Although there is no question that, when enacted in

1972, the act provided for reparations benefits of only $5000; see generally 15 S. Proc., Pt. 5, 1972 Sess., pp. 2143–49, 2161, remarks of Senator Jay Jackson; 15 H. R. Proc., Pt. 5, 1972 Sess., pp. 1843–53, remarks of Representative John Carrozzella; the act also contained § 38-330, granting the insurance commissioner the authority to adopt regulations requiring insurers to offer optional added reparations benefits. This provision created the possibility that insurers in the future would be required to pay more than $5000 in benefits under the act.[6] Given this statutory scheme, we conclude that the legislature intended for the operative provisions of the act, including § 38-325 (d), to apply to reparations benefits paid by an insurer, whether under a policy giving the minimum $5000 coverage originally contemplated, or under a policy offering greater coverage as required by regulation. The term "basic reparations benefits" as used in § 38-325 (d) should therefore be read expansively to take such an extension of insurer liability into account. See Keeton & O'Connell, Basic Protection for the Traffic Victim pp. 8, 311, 422.

Moreover, we agree with the Appellate Court that the defendants' interpretation lacks common sense and frustrates the purposes of the act. One of the primary goals of the act is to reduce insurance premiums by eliminating overlapping benefits from other sources and by creating an efficient reparations system. *Gentile* v. *Altermatt,* 169 Conn. 267, 290–92, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). This purpose would be thwarted if the insured were allowed to retain both the insurance benefits paid by the insurer and the recovery from the tortfeasor. Since most of the act's operative provisions

---

[6] As noted above, at the time the defendant Della Ghelfa purchased coverage, the insurance commissioner required that insurers offer increased coverage. See Regs., Conn. State Agencies § 38-330-1.

refer to "basic reparations benefits" it would also "defy common sense, if those [provisions] only apply to the first $5000 of coverage and not to the excess, sold by the insurer and purchased by the insured for the same purposes as those served by the first $5000." *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* supra, 443.

## II

We consider next whether the insurer's statutory lien and right of reimbursement is enforceable against the insured's attorney. In his cross appeal to the Appellate Court, Rozbicki claimed that the trial court erred in ruling that the complaint stated a cause of action against him for violation of the plaintiff's lien rights under General Statutes (Rev. to 1979) § 38-325 (b). The Appellate Court agreed with the trial court that § 38-325 (b) created a lien enforceable against Rozbicki. *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* supra, 444–45. We affirm.

At the time this action was commenced, General Statutes (Rev. to 1979) § 38-325 (b) provided that when, as here, an insured recovers from a third party tortfeasor, "the insurer is entitled to reimbursement from the claimant to the extent that said basic reparations benefits have been paid *and the insurer shall have a lien on the claimant's recovery to such extent.*" (Emphasis added.) The statute does not specify against whom the lien is enforceable, but instead creates a general lien "on the claimant's recovery." We construe this language as expressly allowing the insurer to enforce the lien against anyone with notice thereof holding the recovery on the claimant's behalf. This is especially true where the possessor of the funds is the claimant's attorney who received the funds as the claimant's agent. See *Derwort* v. *Loomer,* 21 Conn. 244, 255–56 (1851). The plaintiff was therefore entitled to seek reimbursement from Rozbicki for wrongfully disbursing the proceeds of the settlement. See *Unigard Ins. Co.* v.

*Tremont,* 37 Conn. Sup. 596, 598–601, 430 A.2d 30 (1981); 51 Am. Jur. 2d, Liens § 60; see also *Lamb* v. *Peck,* 183 Conn. 470, 472–73, 441 A.2d 14 (1981).

The defendant Rozbicki proffers the argument that the legislature, by amending § 38-325 (b) in 1981 to provide that "no such lien shall attach until such time as the proceeds of such recovery are in the possession and control of such claimant"; Public Acts 1981, No. 81-386, § 2; indicated that it was their original intent to create a lien only against the claimant.[7] There is legislative history to the effect that the legislature, in amending the statute, was reacting to the Superior Court decision of *Unigard Ins. Co.* v. *Tremont,* supra, which held that under the pre-1981 version, an insurer may enforce the statutory lien against the insured's attorney. See 24 H. R. Proc., Pt. 24, 1981 Sess., p. 7862, remarks of Representative Richard Tulisano. We have recognized that where the legislature has amended a prior statute and that amendment was intended to clarify rather than change existing law, then the amending language " 'must be accepted as the legislative declaration of the meaning of the original act.'

---

[7] General Statutes § 38-325 (b) provides: "Whenever a person who receives basic reparations benefits for an injury recovers damages, either by judgment or settlement, from the owner, registrant, operator or occupant of a private passenger motor vehicle with respect to which security has been provided under this chapter or from a person or organization legally responsible for his acts or omissions, the insurer is entitled to reimbursement from the claimant to the extent that said basic reparations benefits have been paid, minus an amount which represents the insurer's contribution toward attorney's fees for the collection of basic reparations benefits. Such amount shall be computed by multiplying the total amount of such reasonable attorney's fees and costs, by a fraction, the numerator of which shall be the amount of basic reparations benefits received by the claimant and the denominator shall be the amount of damages recovered by the claimant, less court costs. In no event shall such amount exceed one-third the amount of the basic reparations benefits to be reimbursed to the insurer. The insurer shall have a lien on the claimant's recovery for the amount to which he is entitled for such reimbursement; provided no such lien shall attach until such time as the proceeds of such recovery are in the possession and control of such claimant."

*Tax Commissioner* v. *Estate of Bissell,* 173 Conn. 232, 246, 377 A.2d 305 (1977); see Sutherland, Statutory Construction (4th Ed.) §§ 22.31, 22.35." *Lee* v. *Board of Education,* 181 Conn. 69, 75, 434 A.2d 333 (1980); see also *Circle Lanes of Fairfield, Inc.* v. *Fay,* 195 Conn. 534, 540, 489 A.2d 363 (1985). In regard to this amendment, however, we cannot agree with Rozbicki that the legislature intended the changes in the act to clarify the existing law. The only relevant legislative history on the amendment are the remarks of Representative Richard Tulisano when he commented: "This [bill] addresses a court decision which somehow indicated that once it was paid over to anybody to pay for the claimant, the lien already attached and there might in fact be liability on a person who would be only a funnel and an intermediary *and this is designed to correct any possible problems* in that area." (Emphasis added.) 24 H. R. Proc., Pt. 24, 1981 Sess., p. 7862. If anything, these remarks indicate a legislative intent to modify rather than clarify the original version of the statute. See *Koskoff, Koskoff & Bieder* v. *Allstate Ins. Co.,* 187 Conn. 451, 455–57, 446 A.2d 818 (1982) (where a 1980 amendment to § 38-325 (b) was similarly held not to clarify the prior law). Thus, the 1981 amendment should not be applied retroactively.

We conclude that the Appellate Court properly construed General Statutes (Rev. to 1979) § 38-325 (b). The statute grants the plaintiff a lien on Della Ghelfa's recovery to the full extent of reparations benefits paid and the lien is enforceable against both Della Ghelfa and Rozbicki.[8]

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

---

[8] Because of our conclusion that the lien created by § 38-325 (b) was enforceable against Rozbicki, we need not reach his argument that, absent the existence of a statutory lien against an insured's attorney, he could not be found liable for conversion.