DONALD F. LoPRESTO *v.* STATE EMPLOYEES
RETIREMENT COMMISSION
(12483)

FOTI, LANDAU and FREEDMAN, Js.

Argued February 17—decision released May 24, 1994

*Robert A. Whitehead,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attor-

ney general, and *Charles A. Overend,* assistant attorney general, for the appellant (defendant).

*Thomas B. Wilson,* with whom, on the brief, was *Raymond L. Baribeault, Jr.,* for the appellee (plaintiff).

FREEDMAN, J. The defendant state employees retirement commission appeals from the judgment of the trial court reversing the commission's declaratory ruling. On appeal, the commission claims that the trial court improperly concluded that the plaintiff, Donald F. LoPresto, was entitled to include five years of municipal service credit in the calculation of his hazardous duty retirement benefit. We agree and reverse the judgment of the trial court.

The following facts are undisputed. The plaintiff is a retired state police trooper. He retired effective March 1, 1992, under the 1991-1992 early retirement incentive program. General Statutes § 5-173[1] provides the guidelines for retirement benefits for state employees with hazardous duty service. The plaintiff had completed more than twenty years of hazardous duty service. Thus, his retirement benefits were calculated pursuant to General Statutes § 5-173. Prior to working as a state trooper, the plaintiff was employed as a police officer by the town of Stonington for five years. Before retiring, the plaintiff applied to purchase municipal service credit pursuant to General Statutes § 5-192b (b) for those five years of employment as a Stonington

---

[1] General Statutes § 5-173 provides in pertinent part: "(a) A state policeman in the active service of the division of state police within the department of public safety . . . who has reached his forty-seventh birthday and completed at least twenty years of hazardous duty service for the state . . . shall be retired on his own application or on the application of the commissioner of public safety or the commissioner of correction, as the case may be.

"(b) On or after October 1, 1982, each such person shall receive a monthly retirement income equal to one-twelfth of (1) fifty per cent of his base salary, as defined in subsection (b) of section 5-162, for such twenty years of service, plus (2) two per cent of his base salary for each year, taken to completed months, of Connecticut state service in excess of twenty years . . . ."

police officer. Section 5-192b[2] makes provision for members of the state employees retirement system to

[2] General Statutes § 5-192b provides: "(a) Any person who became a member of the state employees retirement system and who previously was a member of the Connecticut municipal employees' retirement system shall receive credit for the purpose of retirement under the provisions of this chapter for the period of his service with such municipality, provided there shall be transferred to the state employees retirement fund from the Connecticut municipal employees' retirement fund, on application of a state employee who is a member of tier I, the entire amount paid into the Connecticut municipal employees' retirement fund by the employee as a result of the service of such employee, plus interest at the rate being paid by the Connecticut municipal employees' retirement fund from which such amount is transferred from the date of each payment into such fund to the date such employee became a member of the state employees retirement system, such amount to be computed by the state retirement commission. No transfer of municipal employee contributions and interest shall be required whenever a member of the tier II plan applies for such retirement credit.

"(b) On or before the first of the month following three months after June 28, 1985, any member of the tier I plan in the state employees retirement system who was previously a member of the Connecticut municipal employees' retirement system and who, pursuant to the terms of section 7-440, withdrew all his contributions in the municipal employees' retirement fund upon leaving municipal employment shall be credited, for retirement purposes under this chapter, with such period of prior municipal service upon payment into the state employees retirement fund of an amount equal to the total of all contributions refunded to him from the municipal employees' retirement fund plus five per cent interest on such contributions from the effective date of his withdrawal from the municipal fund to the date of his application for credit under this subsection. Such municipal service shall be considered to be active state service for the purposes of this chapter.

"(c) Any member of the state employees retirement system who has prior service in a municipality, or a department of a municipality, which has not accepted the provisions of part II of chapter 113 shall receive credit for the purpose of retirement under the provisions of this chapter for the period of such service, or any portion thereof, if he complies with the requirements of either subdivision (1) or subdivision (2) of this subsection. (1) Such member may purchase credit for such service upon payment to the state employees retirement fund of either two or five per cent, as appropriate, of his municipal salary for the period of such service, plus an amount determined by the retirement commission as necessary to fund the increased benefits payable by reason of such purchase with interest at the rate of six and one-half per cent, compounded annually, on such payment. (2) Such member may obtain credit for such service upon transfer of the entire amount paid into a municipal retirement fund by the member and the municipality dur-

obtain credit for previous membership in a municipal retirement system.

The plaintiff requested credit for his prior municipal service in the calculation of his hazardous duty retirement benefit. The commission denied the plaintiff's request. In response, the plaintiff petitioned the commission for a declaratory ruling. The commission ruled: "The Petitioner, a Tier I member of the Connecticut State Employees Retirement System, is not entitled to include five years of municipal service credit purchased in accordance with the provisions of Connecticut General Statutes, Section 5-192b (b) in the calculation of his hazardous duty retirement benefit under Connecticut General Statutes, Section 5-173." The plaintiff appealed the commission's declaratory ruling. The trial court ruled in favor of the plaintiff; the commission in turn appealed to this court.

The two statutes relevant to this appeal are General Statutes §§ 5-173 and 5-192b (b). The pertinent language of § 5-173 (b) provides: "On or after October 1, 1982, each such person shall receive a monthly retirement income equal to one-twelfth of (1) fifty per cent of his base salary . . . for such twenty years of service, plus (2) two per cent of his base salary for each year, taken to completed months, of *Connecticut state service* in excess of twenty years . . . ." (Emphasis added.) The relevant language of General Statutes § 5-192b (b) provides: "Such municipal service shall be

ing the period of such service including any earned interest, and payment of an amount determined by the retirement commission as necessary to fund the increased benefits payable by reason of such credit, to the state employees retirement fund. Where required by a municipal ordinance or charter provision, the comptroller may enter into a reciprocal agreement with a municipality in order to effect a transfer of funds under this subdivision. No credit shall be granted under this subsection for any period of service for which a retirement benefit is being paid by any governmental unit or where such grant would result in multiple service credit for the same period of service."

considered to be active *state service* for the purposes of this chapter." (Emphasis added.) We must determine whether a hazardous duty employee may include prior municipal service deemed "state service" under § 5-192b (b) as "Connecticut state service" in the calculation of his hazardous duty retirement benefits pursuant to General Statutes § 5-173 (b).

The trial court concluded that the phrase "Connecticut state service" in § 5-173 included "state service" as contained in § 5-192b (b). The trial court found that the word " 'Connecticut' does not narrow or restrict the meaning of the term in § 5-173 so as to exclude municipal service" and, thus, "[i]t necessarily includes municipal service in accordance with § 5-192b (b)." The trial court reasoned that, because the language of § 5-192b provides that "municipal service shall be considered to be active state service for purposes of this chapter" and "this chapter" includes § 5-173, any other interpretation would "contradict the plain language of the statutes in question." We do not agree with the reasoning of the trial court.

"The standard of judicial review of administrative agency rulings is well established. *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 261, 579 A.2d 505 (1990); *Board of Education* v. *State Employees Retirement Commission,* 210 Conn. 531, 540, 556 A.2d 572 (1989). *Tomlinson* v. *Board of Education,* 226 Conn. 704, 712, 629 A.2d 333 (1993). General Statutes § 4-183 (j) permits modification or reversal of an agency's decision if substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) [i]n violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the

whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . . [T]he [reviewing] court may not retry the case or substitute its judgment for that of the agency on the weight of the evidence or questions of fact. . . . Rather, an agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . .'' (Citations omitted; internal quotation marks omitted.) *Local 1183 of Council No. 4* v. *State Board of Labor Relations,* 33 Conn. App. 541, 546–47, 636 A.2d 1366 (1994).

"On the other hand, it is the function of the courts to expound and apply governing principles of law. *N.L.R.B.* v. *Brown,* 380 U.S. 278, 291, 85 S. Ct. 980, 13 L. Ed. 2d 839 (1965); *International Brotherhood of Electrical Workers* v. *N.L.R.B.,* 487 F.2d 1143, 1170–71 (D.C. Cir. 1973), aff'd sub nom. *Florida Power & Light Co.* v. *International Brotherhood of Electrical Workers,* 417 U.S. 790, 94 S. Ct. 2737, 41 L. Ed. 2d 477 (1974); *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care,* [200 Conn. 133, 140, 509 A.2d 1050 (1986)]; *Real Estate Listing Service, Inc.* v. *Real Estate Commission,* 179 Conn. 128, 138–39, 425 A.2d 581 (1979). *State Medical Society* v. *Board of Examiners in Podiatry,* [208 Conn. 709, 717–18, 546 A.2d 830 (1988)].'' (Internal quotation marks omitted.) *Lieberman* v. *Board of Labor Relations,* supra, 216 Conn. 262–63.

The answer to the question presented in this appeal—whether a hazardous duty employee may include prior municipal service deemed "state service" under § 5-192b (b) as "Connecticut state service" in the calculation of his hazardous duty retirement benefits pursuant to § 5-173 (b)—"turns upon the interpretation of the interrelationship of the various state statutes. This is purely a question of law, and, therefore, invokes a broader standard of review than is ordinarily involved

in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. See [*State Medical Society* v. *Board of Examiners in Podiatry*, supra, 208 Conn. 718]; *Robinson* v. *Unemployment Security Board of Review*, 181 Conn. 1, 5–6, 434 A.2d 293 (1980)." *Lieberman* v. *Board of Labor Relations*, supra, 216 Conn. 263.

"Although the interpretation of statutes is ultimately a question of law; *Connecticut Hospital Assn., Inc.* v. *Commission on Hospitals & Health Care*, 200 Conn. 133, 140, 509 A.2d 1050 (1986); it is the well established practice of this court to 'accord great deference to the construction given [a] statute by the agency charged with its enforcement.' *Corey* v. *Avco-Lycoming Division*, 163 Conn. 309, 326, 307 A.2d 155 (1972) (*Loiselle, J.*, concurring), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699 (1973); accord, *Fellin* v. *Administrator*, 196 Conn. 440, 447, 493 A.2d 174 (1985); *Board of Education* v. *Connecticut State Board of Labor Relations*, 190 Conn. 235, 241, 460 A.2d 1255 (1983); *Chamber of Commerce of Greater Waterbury, Inc.* v. *Lanese*, 184 Conn. 326, 331, 439 A.2d 1043 (1981); *Connecticut State Board of Labor Relations* v. *Board of Education*, 177 Conn. 68, 74, 411 A.2d 28 (1979); *Connecticut Light & Power Co.* v. *Public Utilities Control Authority*, 176 Conn. 191, 198, 405 A.2d 638 (1978); *Anderson* v. *Ludgin*, 175 Conn. 545, 555, 400 A.2d 712 (1978)." *Griffin Hospital* v. *Commission on Hospitals & Health Care*, 200 Conn. 489, 496–97, 512 A.2d 199 (1986).

General Statutes § 5-155a (c) charges the commission with the duty to administer the Connecticut state employees retirement system. Since §§ 5-173 and 5-192b are both a part of the Connecticut state employees retirement system, we accord great deference to the commission's interpretation of these statutes. The commission interprets the word "Connecticut" in

§ 5-173 to limit the state service for which one may receive credit for hazardous duty retirement benefits to actual state service and not municipal service considered to be state service by § 5-192b (b).

"To determine the collectively expressed legislative intent, we look first to the language of the statute itself. If that language is plain and unambiguous, we go no further. *University of Connecticut* v. *Freedom of Information Commission,* 217 Conn. 322, 328, 585 A.2d 690 (1991). If, however, the statute is ambiguous, e.g., either opaque or susceptible to alternative conflicting interpretations, we will seek guidance from 'extrinsic aids,' e.g., the legislative history. *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 200 Conn. 630, 637–38, 513 A.2d 52 (1986); *State* v. *Ellis,* 197 Conn. 436, 445, 497 A.2d 974 (1985). If the legislative history and purpose are also ambiguous, we may resort to 'intrinsic aids,' the technical rules of statutory construction. *Farms Country Club, Inc.* v. *Carini,* 172 Conn. 439, 443, 374 A.2d 1094 (1977); see also *Citizens to Preserve Overton Park, Inc.* v. *Volpe,* 401 U.S. 402, 412 n.29, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971); 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 48.01. In applying these principles, we follow the 'golden rule of statutory interpretation'; 2A J. Sutherland, supra, § 45.12, p. 54; that the legislature is presumed to have intended a reasonable, just and constitutional result. See *Board of Education* v. *State Board of Labor Relations,* 217 Conn. 110, 126, 584 A.2d 1172 (1991); *Gentry* v. *Norwalk,* 196 Conn. 596, 606, 494 A.2d 1206 (1985); *Bridgeport* v. *Stratford,* 142 Conn. 634, 644, 116 A.2d 508 (1955); *Camp* v. *Rogers,* 44 Conn. 291, 298 (1877); see also 2A J. Sutherland, supra, §§ 45.11, 45.12." *Sanzone* v. *Board of Police Commissioners,* 219 Conn. 179, 187, 592 A.2d 912 (1991).

It is not clear from the plain language of either § 5-173 or § 5-192b whether "Connecticut state ser-

vice" as used in § 5-173 includes "state service" as used in § 5-192b (b). In addition, our search of the legislative history of § 5-173 does not shed any light on the legislature's purpose for including the word "Connecticut" preceding "state service." We, therefore, turn to well established maxims of statutory construction.

" 'In construing a statute, this court seeks to ascertain the intent of the legislature as it is expressed through the words actually used.' *State* v. *Grant*, 176 Conn. 17, 20, 404 A.2d 873 (1978)." *State* v. *Anderson*, 227 Conn. 518, 527–28, 631 A.2d 1149 (1993). The trial court's conclusion that "Connecticut state service" is the same as "state service" renders the word "Connecticut" meaningless. "[N]o part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous. *Peck* v. *Jacquemin*, 196 Conn. 53, 66, 491 A.2d 1043 (1985)." (Citations omitted; internal quotation marks omitted.) Id. We conclude, therefore, that the word "Connecticut" must set some limitation or restraint on the words "state service."

Further support for this conclusion is found by reviewing the statutory sections that constitute the Connecticut state employees retirement system. General Statutes § 5-154 et seq. The phrase "state service" is found throughout these sections.[3] We conclude, therefore, that when the legislature attached the word "Connecticut" to the phrase "state service" in § 5-173 it intended something different from the phrase "state service" without "Connecticut" attached to it as found throughout the statutory scheme.

---

[3] See, e.g., General Statutes §§ 5-154, 5-162, 5-162f, 5-162g, 5-162h, 5-163, 5-163a, 5-164a, and 5-166.

The legislative history of § 5-192b reveals the legislature's purpose in enacting subsections (b) and (c). Before 1984, the statute consisted of only subsection (a). In 1984, the legislature amended the statute to add subsections (b) and (c).[4] The purpose of the amendment was to resolve the inequities created by subsection (a), which did not permit certain members of the state employees retirement system (SERS), who were previously members of a municipal employees retirement system (MERS), to obtain retirement credit for that service. 27 H.R. Proc., Pt. 19, 1984 Sess., pp. 6904–6906; 27 S. Proc., Pt. 6, 1984 Sess., p. 2228. Subsection (a) allows a state employee, who is a member of SERS, who had prior service in a municipality that had joined MERS and who did not withdraw his or her retirement contributions, to obtain credit for those contributions for the purpose of retirement benefits. This, however, left members of SERS who previously had been employed by municipalities that had not joined MERS and those who had withdrawn their retirement contributions unable to obtain credit for their prior municipal service. The amendment adding subsections (b) and (c) remedied this inequity. Subsection (b) provides that members of SERS who previously had been municipal employees whose municipality had joined MERS and who withdrew their retirement contributions from the municipal retirement fund when they left municipal service may obtain credit for those contributions by making certain payments into the SERS fund. Subsection (c) provides that members of SERS who had previously been municipal employees and had prior service in a municipality that had not joined MERS may also obtain credit for that prior municipal service by certain payments of transfers.

---

[4] Public Acts 1984, No. 84-447. Subsection (b) was further amended by Public Acts 1985, No. 85-510 to change the dates of eligibility.

The trial court's interpretation of § 5-192b, for the purposes of hazardous duty retirement benefits, recreates the same type of inequity that the 1984 amendment was designed to remedy. The language converting municipal service to state service is found only in subsection (b). Thus, only hazardous duty employees who previously had worked for a municipality that had joined MERS and who had withdrawn their retirement contributions when they left municipal service would be entitled to credit for their previous municipal service. Hazardous duty employees who fall under subsection (a) or (c) would not be entitled to a credit for their prior municipal service because those subsections do not contain the language converting municipal service to state service. This result directly contradicts the legislature's intent in amending § 5-192b. We cannot presume that the legislature intended to create such a bizarre result. See *DeMilo* v. *West Haven*, 189 Conn. 671, 679, 458 A.2d 362 (1983), and cases cited therein.

Taking together our deference to the commission's interpretation of the statutes, the opinion of the trial court rendering the word "Connecticut" meaningless, and the fact that the trial court's interpretation is not only contrary to the legislature's intent but also creates a bizarre result, we conclude that the word "Connecticut" in § 5-173 places a limitation on the phrase "state service." We hold, therefore, that "Connecticut state service" as used in § 5-173 is limited to actual service for the state of Connecticut and does not include prior municipal service considered state service pursuant to § 5-192b (b).

The judgment is reversed and the case is remanded with direction to render judgment denying the plaintiff's appeal.

In this opinion the other judges concurred.