[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case invokes a challenge to a statewide franchise to provide community antenna television service (CATV or cable). The franchise and Certificate of Public Convenience and Necessity (CPCN) were granted by the defendant the Connecticut Department of Public Utility Control (DPUC). SNET Personal Vision, Inc. (SPV) was awarded the statewide CATV franchise SPV is a party to the appeal.
The plaintiffs are the incumbent CATV franchisees who will be competing with SPV.[1] The defendant DPUC is an agency of the state authorized to certify, regulate, and supervise CATV operators in Connecticut. The defendant SPV is a wholly owned subsidiary of the Southern New England Telephone Company (SNET). The remaining party in this appeal is the Office of Consumer Counsel (OCC), the consumer advocate pursuant to General Statutes § 16-2a in all matters that may affect Connecticut consumers of public service companies.
The appeal is brought pursuant to the Uniform Administrative Procedures Act (UAPA), General Statutes § 4-166, et seq.
The DPUC conducted extensive proceedings relating to the underlying SPV application filed January 25, 1996. In its application SPV requested a CPCN to provide CATV service in a territory franchise covering the entire state of Connecticut for a 15 year term.
Following the receipt of the formal application, DPUC issued a "Request for Written Comments," on February 15, 1996. The request solicited written comments from parties and intervenors. Five separate written comments were received. On April 1, 1996, the DPUC noticed an April 10, 1996 pre-hearing conference of DPUC staff, parties, intervenors and other interested organizations. CT Page 8434 The conference addressed procedural matters including interests of the participants and scheduling matters. Each of the Connecticut CATV operators was named a party along with NECTA as a representative of the operators of 22 of the 24 Connecticut CATV franchises. See April 18, 1996 procedural order.
The DPUC on April 25, 1996, issued a "Statement of the Scope of the Proceeding" recognizing that in considering SPV's application, DPUC must answer three questions:
 "(1) Does Connecticut law authorize the grant of a statewide cable franchise? (2) If so, does Personal Vision (SPV) meet the requirements governing issuance of a CPCN? and (3) If so, what are the appropriate terms and conditions to be included in the CPCN (of which the franchise agreement is a part)?
Many of the CATV franchisees joined in a Motion to Dismiss which addressed the first issue (Motion to Dismiss Without Prejudice dated April 8, 1996). The issue was briefed and argued orally on May 17, 1996. In a decision dated May 23, 1996, the DPUC denied such motion finding that it had subject matter jurisdiction to hear the SPV application.
Pursuant to Notices of Hearings dated April 19, May 28, and June 6, 1996, DPUC held nine hearings for the purpose of receiving public comment and input on the application.[2] The public hearings were held in New Haven, Westport, New London, Willimantic, Hartford, Torrington, Stratford, Waterbury and Danbury.
Hearings on the application were held at DPUC's New Britain offices on June 4, 5, 6, 11, 12, 19, 20, and 25, 1996. At the hearings all parties were afforded the opportunity to cross-examine witnesses and present evidence.
The DPUC issued a draft decision on August 2, 1996. All parties and intervenors were afforded notice and opportunity to file exceptions and to argue orally on August 19, 1996. SPV, as directed in the draft decision, submitted a Proposed Franchise Agreement on August 2, 1996. All parties and intervenors were afforded an opportunity to comment on the compliance of the Proposed Franchise Agreement with the draft decision. SPV submitted reply comments as well as a Revised Proposed Franchise Agreement on August 23, 1996. CT Page 8435
The DPUC issued a second draft decision on September 6, 1996, and SPV submitted a Second Revised Proposed Franchise Agreement. All parties and intervenors were afforded the opportunity to comment and argue orally on the second draft decision and comment in writing on the proposed Franchise Agreement. The record of the proceedings was reopened on September 18, 1996, for purposes of taking administrative notice of other CATV proceedings. The final decision was issued on September 25, 1996, which granted SPV a statewide CATV franchise for an eleven year franchise term.
This appeal was filed on November 8, 1996. The Record was filed on January 21, 1997. Briefs were filed by NECTA on February 19, 1997; SPV and SNET on March 17, 1997; the DPUC on March 17, 1997, and the OCC on March 18, 1997. The parties were heard at oral argument on June 4, 1997.
In its decision, the DPUC explained that the CATV industry has experienced a technological and public policy revolution. A monopoly system based on local franchises dictated by technological limitations has evolved into a competitive environment (to be rate deregulated upon effective competition) where a statewide franchise is feasible. These developments in the policy sphere are evidenced in explicit legislative mandates at both the state and federal level. (See Telecommunications Act of 1996, Pub.L. No. 104-106; Cable Television Consumer Protection Act of 1992, Pub.L. No. 102-305; General Statutes § 16-247a(a); Public Acts 1994, No. 94-83; Public Acts 1985, No. 85-509). The technology has progressed from the trunk-feeder line cable system to the hybrid fiber coaxial network which represents the seamless telecommunications environment melding telephone and video services.
Excluding SPV's statewide francnise, Connecticut has 24 franchise areas served by 12 operators. There have been four overbuild[3] or competing franchises granted since Connecticut changed from a monopoly to a competitive franchise system in 1985. (None of the competing franchises were operational as of the date of argument.) In all these cases the incumbent CATV operators have challenged the granting of a CPCN and competing franchise. (Cable Systems of Southern Connecticut Ltd. v. DPUC,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 556589 (November 4, 1996); Comcast v. DPUC,
Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 557699 (November 4, 1996); United Cable v.CT Page 8436DPUC, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 545653 (January 19, 1996); United CableTelevision v. DPUC, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 536175 (August 30, 1994). Thus, effective competition is still not a reality.
The defendants contest the issue of aggrievement. In UnitedCable Television Services v. DPUC, 235 Conn. 334 (1995), our Supreme Court limited the scope of an incumbent's challenge to the level playing field statute, General Statutes § 16-331
(g), formerly General Statutes § 16-331 (i). "The fundamental test for determining aggrievement encompasses a well-settled two-fold determination: first, the party claiming aggrievement must successfully demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest. . . . Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the decision." United Cable Television Services v. DPUC, supra,235 Conn. 342-43. The defendants claim that the plaintiffs do not satisfy the second prong of this test.
The incumbent CATV providers' "interest in competing under comparable terms is a legally protected interest pursuant to § 16-331 (i). An allegation of a specific injury to the interest, therefore, can satisfy the second prong of the aggrievement test." (Citation omitted.) United Cable TelevisionServices, supra, 235 Conn. 355. However, United Cable
specifically prohibits incumbent cable operators from purporting to represent or indicate the public interest. "An existing competitor, not being in the zone of interests protected, has no standing to raise claims as to the general fitness of an applicant." Id., 346.
An incumbent CATV franchisee has an interest in competing on a level playing field pursuant to General Statutes § 16-331
(g).
 "[Section 16-331 (g)] envisions a level playing field so that an applicant for a new franchise does not enter the market at a competitive advantage. A new competitor's entry into a market under more favorable terms and conditions than those governing an existing competitor would represent the type of "unfair" or "illegal" competition that the existing CT Page 8437 competitor has standing to protest pursuant to §§ 4-183 and 16-35.
United Cable Television Services v. DPUC, supra, 235 Conn. 355.
Thus, the plaintiffs are only aggrieved as to their level playing field claims brought under to General Statutes §16-331 (g).[4]
The defendants make substantial arguments that the plaintiffs have no standing to raise the statutory basis for a statewide franchise under the level playing field analysis. In that this claim falls within the arguments relating to the competitive advantage of the statewide franchise, it is appropriate to consider the challenge to the statutory basis of SPV's franchise.
The court will now consider the issue of NECTA's standing to raise the claims of its members.
"In Connecticut Assn. of Health Care Facilities, Inc. v. Worrell,199 Conn. 609, 508 A.2d 743 (1986), this court approved representational standing as delineated by the United States Supreme Court in Hunt v. Washington State Apple AdvertisingCommission, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383
(1977): `[A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit'"
Timber Trails Corp. v. Planning Zoning Commission,222 Conn. 380, 393 (1992).
NECTA's membership includes 22 of the 24 CATV franchisees in Connecticut. The first prong of the test has been satisfied to the extent that the CATV operators are aggrieved by the DPUC's level playing field analysis. The second prong of the test is also satisfied: NECTA's purposes include protecting and vindicating the interests of its members in legislative and regulatory proceedings. Its members have an interest in fair competition as discussed above. Third, as NECTA asserts, "proof relating solely to the variant experiences of each [member] resulting from the DPUC policy at issue will not be necessary"Connecticut Assn. of Health Care Facilities, Inc. v. Worrell,
CT Page 8438199 Conn. 609, 617 (1986). The three prongs having been satisfied, NECTA has standing in this administrative appeal.
Turning to the merits of this appeal, the plaintiffs claim: (1) the DPUC improperly granted SPV a single statewide franchise in contravention of § 16-331 (a);[5] (2) the DPUC improperly conducted the level playing field analysis pursuant to § 16-331(g); (3) the franchise improperly provides SPV with substantial competitive advantages not permitted by the level playing field requirement under § 16-331(g); and (4) the DPUC improperly failed to give the defendants access to certain evidence submitted by SPV at the administrative hearing. The court disagrees.
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Citations and internal quotation marks.)Dolgner v. Alander, 237 Conn. 272, 280 (1996).
This court "must decide, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily or illegally, or abused its discretion. Ottochian v.Freedom of Information Commission, 221 Conn. 393, 397,604 A.2d 351 (1992). Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . New Haven v. Freedom of Information Commission,205 Conn. 767, 774, 535 A.2d 1297 (1988)." (Internal quotation marks omitted) Perkins v. Freedom of Information Commission,228 Conn. 158, 164-65 (1993).
"Although the interpretation of statutes is ultimately a question of law . . . it is the well established practice of this court to accord great deference to the construction given [a] statute by the agency charged with its enforcement. . . . GriffinHospital v. Commission on Hospitals Health Care, 200 Conn. 489, CT Page 8439 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023,107 S.Ct. 781, 93 L.Ed.2d 819 (1986); see also New Haven v. Freedom ofInformation Commission, supra, 773-74; Wilson v. Freedom ofInformation Commission, 181 Conn. 324, 342-43, 435 A.2d 353
(1980)." (Internal quotation marks omitted.) Perkins v. Freedomof Information Commission, 228 Conn. 158, 165 (1993).
Contrary to the plaintiffs' first position, the plain language of § 16-331 does not limit new franchises to the boundaries of existing franchises. In construing statutes, a court seeks to ascertain and give effect to the apparent intent of the legislature. . . . It is an axiom of statutory construction that legislative intent is to be determined by an analysis of the language actually used in the legislation. . . . [W]hen the language of a statute is plain and unambiguous, we need look no further than the words themselves because we assume that the language expresses the legislature's intent. . . ." (Citations omitted; internal quotation marks omitted) Dos Santosv. F.D. Rich Construction, Inc., 233 Conn. 14, 20, 658 A.2d 83
(1995). Courts will seek guidance from the legislative history if a statute is ambiguous, i.e., "opaque or susceptible to alternative conflicting interpretations." Shelby Mutual Ins. Co.v. Della Ghelfa, 200 Conn. 630, 637-38, 513 A.2d 52 (1986); Statev. Ellis, 197 Conn. 436, 445, 497 A.2d 974 (1985); LoPresto v.State Employees Retirement Comm., 34 Conn. App. 510, 517 (1994).
"If the legislative history and purpose are also ambiguous, we may resort to `intrinsic aids,' the technical rules of statutory construction. Farms Country Club, Inc. v. Carini,172 Conn. 439, 443, 374 A.2d 1094 (1977); see also Citizens toPreserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 412 n. 29,91 S.Ct. 814, 28 L.Ed.2d 136 (1971); 2A J. Sutherland, Statutory Construction (4th Ed. Sands) § 48.01. In applying these principles, we follow the `golden rule of statutory interpretation'; 2A J. Sutherland, supra, 45.12, p. 54; that the legislature is presumed to have intended a reasonable, just and constitutional result. See Board of Education v. State Board ofLabor Relations, 217 Conn. 110, 126, 584 A.2d 1172 (1991)" (Citations omitted.) LoPresto v. State Employees RetirementComm., supra, 34 Conn. App. 517.
The language in question arises from our legislature's policy decision to shift from a monopolistic CATV system to a competitive one providing "customers with the benefits of competition and the best possible cable television services" CT Page 8440United Cable Television Services v. DPUC, 235 Conn. 352. The phrase "any franchise area or portion of a franchise area" is not defined. It does not on its face exclude the granting of a statewide franchise. Neither the statutes nor the regulations governing CATV licensing limit the size of a franchise
To the extent that § 16-331 (a) may be read as ambiguous, resorting to the history and purpose of the act is of little assistance to the plaintiff. The policy of encouraging competition is not served by inserting into the statute restrictions on the nature of franchise areas. Furthermore, contrary to the plaintiffs' assertions, the legislative history does not compel a different result.
Historically, as the DPUC notes, the agency and its predecessor organizations since 1963 have been designing franchise areas "to best serve the public interest and to establish more viable systems" (Decision p. 40). Franchises have been consolidated, for example. In one instance three franchises were consolidated into one. See Decision, Docket No. 93-02-03, Request of Crown Media to Consolidate Housatonic, New Milford, and Mid-Connecticut Franchises (August 11, 1993). Also, see changes in franchise areas in Decision, Docket No. 92-05-15, Application of Time Warner Entertainment Company, L.P., for Approval of Transfer of Certificate of Public Convenience and Necessity, from Laurel Cablevision, Inc. to Time Warner Entertainment Company, L.P. (October 27, 1993).
The court will not read into the statute a limitation on agency authority not apparent in the language, contrary to the historical treatment of franchise areas, and in contravention of the express legislative policy of encouraging CATV competition.
The plaintiffs next claim that the DPUC conducted an improper level playing field analysis under § 16-331(g). As noted earlier our courts have had occasion to apply the level playing field analysis, but only in the context of overbuilds of existing franchises. The overbuild franchises essentially followed the geography of existing franchises. Thus, the level playing field juxtaposition was: "A proper inquiry required consideration of the entire package of terms and conditions required of both cable providers in order adequately to determine whether one has been favored over the other." United Cable Telephone Service v. DPUC,
supra, 235 Conn. 359-60. CT Page 8441
The SPV franchise is competing with all the incumbent providers in all 24 Connecticut franchise areas. DPUC in conducting the level playing field analysis compared SPV's franchise terms with the other providers considering average or typical conditions as well as particular specific terms. The plaintiffs contend that "[s]ince terms and conditions differ among franchise areas, the DPUC was obliged to conduct 24 separate franchise specific level playing field comparisons, to ensure that SPV does not enter any particular market under more favorable or less burdensome terms and conditions than those imposed upon existing franchisees." (NECTA brief p. 31).[6]#2
The court concludes that the DPUC met its obligation under § 16-331 (g), under the facts of this application process; by conducting the following analysis in its decision:
 "A point by point comparison is not required. The Department therefore, must look at the totality of the terms and conditions of SPV's franchise and compare such with the totality of the terms and conditions imposed on the incumbent providers. For organization purposes, throughout this Decision, the [DPUC] discusses the specific terms and conditions of SPV's franchise that the incumbent providers claim are more favorable; upon completion of all such analysis, the [DPUC] engages in a review of the entire package of terms and conditions applied on SPV as compared to the entire package of terms and conditions imposed on the incumbent providers."
(Dec. p. 45).
This analysis fairly accomplished the analysis required under § 16-331(g) as directed by United Cable Television ServicesCorp. v. DPUC, supra, 235 Conn. 359-360. It was especially responsive to the incumbent CATV providers' claims before the DPUC and this court. The plaintiffs did not present any specific franchise agreement in juxtaposition to the SPV franchise. The claims emphasized specific SPV terms and contrasted them with general conditions of incumbents or specific terms of various franchisees. The plaintiffs approach invited if not dictated the type of analysis used by the DPUC.
The court will commence the specifics of the challenge to the CT Page 8442 level playing field analysis with the primary objection to the SPV statewide franchise. The DPUC's decision to grant a statewide franchise recognizes there may be economies of scale in deployment (on a per mile basis). The DPUC further determined that regarding operational costs (on a per subscriber basis) the effects of economies of scale are tentative, speculative and balanced against potential diseconomies from the scope of SPV's commitment to provide full statewide availability by 2009 without any subscriber contributions. In some instances, SPV will extend service to sparsely populated areas of the state before the incumbent operators.
Efficiencies of scale resulting from the design, operation, and administration of the SPV franchise are legitimate entitlements reflecting the financial risk assumed by SPV. It is also important to note that the plaintiff's enjoy the benefits of incumbency not possessed by SPV.
The plaintiffs as incumbents benefit from their incumbency in ways that SPV cannot benefit from a statewide franchise. They have enjoyed nearly three decades of protection from competition and enjoy a strong customer base.
The plaintiffs, as part of their level playing field claims, challenge the statewide franchise because it allows SPV to disregard existing franchise boundaries. This claim is equally unavailing. The DPUC considers the historical, technological, and financial reasons for existing franchise boundaries as essentially outmoded. The historical changes in such boundaries evidence this flexible nature of franchise boundaries, especially in the context of the current legislative policy favoring competition.
The incumbents further claim that they are denied a comparable opportunity for a statewide franchise. The opportunity has only existed since 1985 when P.A. 85-509 was enacted; and SPV is the first applicant to request a statewide franchise. The SPV statewide franchise is non-exclusive and plaintiffs are not prohibited from seeking a similar franchise. The decision in fact encourages incumbents to consider expansion of the scale and scope of their operations (Decision p. 47). There is no requirement under § 16-331(g) or any other statute that SPV or any other CATV provider must operate only town based franchises. CT Page 8443
The incumbents vigorously challenge SPV's release from compliance with the construction and extension requirements. They claim this release give SPV an unfair advantage.
The DPUC found that its construction regulations, Regs., Conn. State Agencies § 16-333-13, et seq., are not applicable to SPV. SPV is not constructing a CATV system. SPV is utilizing the SNET "I-SNET" telephone network to transport CATV signal to subscribers. SPV will be leasing video transport capacity from SNET. SNET is a telephone company regulated by the DPUC under the statutes and regulations specific to telephone companies. See General Statutes § 16-228, et seq. SNET is also the party constructing the network. It is not a CATV operator and thus not subject to CATV regulations.
Additionally, the DPUC's CATV construction regulations relate to an "energized trunk and feeder" system which is not applicable to SPV because it will utilize the I-SNET network.
The DPUC, though not applying its construction regulations, is requiring an expeditious buildout by SPV. SPV must complete its entire statewide network in 11 years. In its level playing field analysis DPUC notes that 18 of the 24 franchise areas were completed prior to the adoption of the construction regulations; and they, like SPV, were not subject to such regulations. The average period for franchise buildout is 12.4 years. The SPV rate of buildout greatly exceeds that required of other operators (Decision p. 76-78). Eleven of the 24 franchises were completed in less than 11 years but those buildouts did not involve the large areas of sparsely settled territory which SPV is required to reach by 2009. In fact, as already noted, SPV will be required to extend service to areas of the state before certain incumbent operators are required to do so. SPV, unlike other CATV operators, will be unable to require contributions in aid of construction from rural subscribers. SPV has not been given an unfair advantage because the DPUC released it from the buildout regulations.
As to the plaintiffs' level playing field challenge directed at SPV's community access duties, SPV will fulfill its community service obligation through interconnection to existing community access providers and annual contributions of $5 per subscriber to such providers as provided by P.A. 95-50, now codified as §16-331. The $5 figure exceeds the access support of 15 of the 24 franchise areas. The incumbent contributions range from $1.84 to CT Page 8444 $8.40.
The incumbents object to SPV avoiding the necessity of providing access facilities and dealing directly with community access providers. SPV will be spared what some of the incumbents allege to be burdensome community access operations; however, such operations are measured in financial terms. The DPUC decision accurately reports that, "our society expresses its commercial values in dollar terms; blood is not required." (Decision p. 120.) Community non-profit organizations manage community access currently in several franchise areas. Thus, SPV will not be the only CATV operator not providing access facilities directly.
In rejecting the incumbents level playing field community access challenge the DPUC states: "It is not necessary for SPV to recapitulate the historical experience of other cable operators in order to assure a level playing field." (Decision P. 120).
In the Superior Court decision affirmed in United Cable v.DPUC, supra, Judge Hodgson directs just such an approach:
 The illogicality of an item-by-item approach is clear when the court considers that T.C.I. or rather its predecessor in interest, was granted its franchise in 1967. If it were required to achieve point-by-point equality in terms of conditions, the DPUC would be put in the position of imposing particular requirements on a new entrant not because of any real need but simply to match the situation that existed at the time of the application of the existing entrant, without regard to new information, new technology, or other temporal developments.
United Cable v. DPUC, supra, Docket No. 536125.
In addition to the financial support and interconnection with existing services, SPV will provide free basic service to schools and libraries, and return paths to municipalities. SPV will devote three channels to community access as well as a statewide educational channel. This channel commitment exceeds that of most incumbent operators.
SPV will be making a comparable contribution to community access. The construction of additional community access CT Page 8445 facilities in order only to burden SPV is not required by §16-331 (g) and would constitute more of a public nuisance than benefit.
The plaintiffs assert that SPV has a competitive advantage because SNET will bear a disproportionate share of the costs of the I-SNET network. SNET as a regulated telephone company would not be able to shift this cost to subscribers without DPUC review. The allegations are entirely speculative and thus established no unfair competitive advantage for SPV.
Finally, the plaintiffs argue that DPUC improperly denied their request for access to evidence admitted into the record. According to the plaintiffs, this information was relevant to their level playing field claims. The materials at issue included SPV's construction and build out schedules, financing arrangements and financial documentation. What the plaintiffs overlook is the fact that the level playing field analysis compares the terms and conditions of the franchise agreement granted the CATV operator seeking entry into the field with the franchise agreements of the incumbent operators. The plaintiffs were given adequate time to review the revised franchise agreements submitted to the DPUC. The plaintiffs' rights were not violated.
The incumbents with market shares ranging up to 80% appear to be challenging the existence of any competition in the field of cable television. In 1985 the state legislature dictated that CATV franchises would be non-exclusive, but to the date this case was argued in June of 1997 there had been no actual competition. The SPV franchise offers significant, effective CATV competition for many areas in the near future, and on a statewide basis in eleven years. The terms and conditions of SPV's franchise are reasonable and fair, promote competition, and are in accordance with the level playing field requirement mandated by § 16-331
(g).
The appeal is dismissed.
McWeeny, J.