[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
INTRODUCTION
This is an administrative appeal brought by an attorney, Alan E. Silver (Silver), from the issuance to him of a reprimand by the Statewide Grievance Committee (the Committee) for violation of Rule CT Page 7849 1.15(b) of the Rules of Professional Conduct (hereinafter, sometimes, the Rule), which states:
 Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
 FACTS
The undisputed facts in this case are:
Silver represented Samuel Jones (Jones) in a personal injury claim arising out of a motor vehicle accident (the accident) which occurred on December 7, 1987;
Safeco is an insurance company which provided no-fault insurance coverage to Jones on December 7, 1987;
By its letter dated March 18, 1988, Safeco advised Silver that, as of that date, it had paid Jones $4,164 under his no-fault coverage in connection with the accident, and that it expected to be reimbursed from the proceeds of any recovery made by Jones;
By its letter dated May 18, 1988, Safeco advised Silver that, as of that date, it had paid Jones $5000 under his no/fault coverage, and that it expected to be reimbursed from the proceeds of any recovery made by Jones;
Within several days after April 19, 1989, a check payable to Jones and Silver in the amount of $20,000 was received from the CT Page 7850 liability insurance carrier which insured the party responsible for the accident in settlement of Jones' claims against its insured, and the proceeds of that check were deposited in Silver's account and distributed by him;
Jones directed Silver not to reimburse Safeco, and Silver neither notified Safeco of the receipt of the $20,000 nor paid Safeco any portion of that money;
By its letters dated August 18, 1989 and January 8, 1990, Safeco again advised Silver that it expected to be reimbursed from the proceeds of any recovery made by Jones;
Travelers is an insurance company which provided underinsured motorist coverage which covered Jones on the day of the accident, and on March 14, 1990 Travelers issued a check payable to Jones and Silver in the amount of $65,000 in settlement of Jones' claim against Travelers arising out of the accident. (The $65,000 settlement from Travelers and the $20,000 settlement from the liability carrier for the party responsible for the accident are, sometimes, hereinafter referred to, collectively, as the settlement proceeds.) The proceeds of the Travelers check were deposited in Silver's account and distributed, and Silver neither notified Safeco of the receipt of the $65,000 from Travelers nor paid Safeco any portion of it.
HISTORY
The Grievance Panel for the Judicial District of New Haven, Geographical Area 6, investigated this matter and concluded that there was no probable cause that Silver was guilty of misconduct.
A three-person reviewing committee of the Committee voted to recommend that Silver be reprimanded by the Committee for violation of the Rule, with one member of the reviewing committee dissenting. The Committee thereafter issued a reprimand to Silver. CT Page 7851
DISCUSSION
The Rule imposes two distinct obligations one lawyer, each of which the Committee found that Silver had violated. Each of those obligations is discussed below, separately.
Duty to Notify
The first obligation imposed on a lawyer by the Rule is a duty to notify, and is framed by the Rule as follows:
 Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person.
If Safeco had an "interest" in the settlement proceeds, it was Silver's duty to notify Safeco of his receipt of those monies. The initial inquiry is, therefore, whether Safeco had an interest in the settlement proceeds, and that inquiry begins with a review of the Comment to the Rule, which states:
 Third parties, such as a client's creditors, may have just claims against funds or other property in a lawyer's custody. A lawyer may have a duty under applicable law to protect such third-party claims against wrongful interference by the client, and accordingly may refuse to surrender the property to the client. However, a lawyer should not unilaterally assume to arbitrate a dispute between the client and the third party.
By invoking "applicable law" as the determinant of whether a lawyer in a particular case has a higher duty to a third party than to a client, the Comment requires a review of Connecticut law regarding reimbursement to a no-fault carrier-in order to determine if Safeco had an "interest" in the settlement proceeds.
No-fault benefits, and reimbursement to a no-fault carrier, entered Connecticut law with the adoption of Public Act 72-273, Section 7 (which was originally codified as § 38-325 of the General Statutes), which provided, in relevant part: CT Page 7852
 Whenever a person who receives basic reparations benefits for an injury recovers damages from the owner, registrant, operator or occupant of a private passenger motor vehicle with respect to which security has been provided under this chapter or from a person or organization legally responsible for his acts or omissions, the insurer is entitled to reimbursement from the claimant to the extent that said basic reparations benefits have been paid and the insurer shall have a lien on the claimant's recovery to such extent.
 Unigard Ins. Co. v. Tremont, 37 Conn. Sup. 596 (1981), is the first reported Connecticut case interpreting a no-fault insurer's lien rights against a claimant's lawyer. In Tremont, the trial court found that the lien created by § 38-325(b) was effective against the insured, only, and did not impose a lien on the proceeds of recovery while they were in a lawyer's possession. However, in its decision of February 20, 1981, the Appellate Session of the Superior Court reversed the trial court and held that "the lien created by § 38-325(b) was imposed on the proceeds of the claimant's recovery while it was' in the possession and control of her attorney." Id., 599.
In 1981, shortly after the issuance of the Tremont decision by the Appellate Session, the General Assembly adopted P.A. 81-386, Section 2, which amended § 38-325((b)) to add, at its conclusion, the words: "provided no such lien shall attach until such time as the proceeds of such recovery are in the possession and control of such claimant" (For purposes of historical completeness, it is noted that § 38-325(b) was subsequently recodified as § 38a-369(b), which in turn was repealed by Public Act 93-297, Sections 28 and 29, effective January 1, 1994.)
During the debate on the floor of the House of Representatives on what was to become P.A. 81-386, Representative Tulisano made it clear that the bill then under consideration was intended to address the Tremont issue, as follows:
 "This [bill] addresses a court decision which somehow indicated that once it was paid over to anybody to pay for the claimant the lien CT Page 7853 already attached and there might in fact be liability on a person who would be only a funnel and an intermediary and this is designed to correct any possible problems in that area."
24 H.R. Proc, Part 24, 1981 Sess., p. 7862.
That P.A. 81-386 was intended to relieve lawyers of the obligation to reimburse no-fault carriers for amounts paid to their clients under no-fault coverage was made clear by our Supreme Court when, in Shelby Mutual Ins. Co. v. Della Ghelfa, 200 Conn. 630, 640
(1986), the court said that:
 There is legislative history to the effect that the legislature, in amending the statute, was reacting to the Superior Court decision of Unigard Ins. Co. v. Tremont, supra, which held that under the pre-1981 version, an insurer may enforce the statutory lien against the insured's attorney. See 24 H.R. Proc., Pt. 24, 1981 Sess., p. 7862, remarks of Representative Richard Tulisano.
Two reported Superior Court decisions deal with whether, after the adoption of P.A. 81-386, a lawyer is liable to a no-fault carrier for failing to reimburse the carrier for no-fault benefits out of a third party recovery in the lawyer's hands. In each of those cases it was found that the lawyer is not liable to the no-fault carrier for failing or refusing to reimburse. Unigard MutualIns. Co. v. Luddington, 12 CLT 17 (1986); Commercial Union Ins. Co.v. DePonte, 13 CLT 48 (1987).
From the legislative history of our no-fault lien statute, and from Luddington and DePonte, it is clear law in Connecticut that a no-fault insurer does not have an enforceable lien against the proceeds of a third party recovery while those proceeds are in the possession and control of the claimant's lawyer.
The Decision of the Committee (Record, Item 27), which contains the reprimand issued to Silver, ignores the language of P.A. 81-386, the holdings of Luddington and DePonte and the observation of the Supreme Court in Della Ghelfa, as the following excerpt makes clear: CT Page 7854
 It is our opinion that the Respondent's [Silver's] client came into possession and control of the settlement proceeds when the Respondent received the check from the insurance company issued jointly to the Respondent and his client. We conclude that Safeco's lien attached at that time, entitling Safeco to its funds.
In its brief, the Committee has withdrawn from its original position that Safeco's lien "attached" while the settlement proceeds were in Silver's hands to the position that: "A lien, whether or not attached, is an interest subject to the ethical requirements of the Rule. Therefore, SAFECO had an interest in funds in the possession of the Respondent."
Whether Safeco had such an "unattached" lien which constituted an "interest" under the Rule which entitled Safeco to notice from Silver of his receipt of settlement checks can only be fairly and completely addressed in the context of Rule 1.6(a) of the Rules of Professional Conduct, which states:
 A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (a), (b), (c), and (d).
(None of the exceptions stated in Rule 1.6(a) pertains to the facts in this case.)
If the Committee is correct that Safeco had an unattached lien against the settlement proceeds in Silver's hands which constituted an interest in the settlement proceeds under the Rule, then Silver was obligated to notify Safeco of his receipt of the settlement proceeds, which would have put him in conflict with his obligation to Jones under Rule 1.6(a).
To recap, Tremont construed § 38-325(b) to require lawyers to reimburse no-fault carriers out of third party recoveries received by them. In adopting P.A. 81-386, the General Assembly reversed the rule of Tremont and eliminated a lawyer's obligation to reimburse a no-fault carrier. The Committee's proposition that, in CT Page 7855 so doing, the General Assembly intended to bifurcate § 38-325(b) liens into attached and unattached segments, thereby creating " inevitable conflicts for lawyers between their respective obligations under Rule 1.15(b) and Rule 1.6(a), is unappealing and unpersuasive. Further, such an interpretation of Rule 1.5(b) would constitute a de facto repealer of P.A. 81-386 because, if that interpretation were adopted, attorneys would no doubt, with or without a client's authorization, pay no-fault carriers' liens rather than expose themselves to disciplinary action. Accordingly, it is held that Safeco did not have an "interest" under Rule 1.15(b) which entitled it to notice from Silver of his receipt of the settlement proceeds.
Duty to Pay
The second obligation imposed on a lawyer by the Rule is a duty to deliver money or property to whoever is entitled to receive it, and is framed by the Rule as follows:
 Except as stated in this rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.
Whether Silver had a duty to reimburse Safeco the amount of its § 38-325(b) lien from the settlement proceeds depends upon whether Safeco was legally entitled to reimbursement from the settlement proceeds. As noted above, the Committee determined that the lien attached to the settlement proceeds while they were still in Silver's hands. For the reasons stated in the previous section, and for the additional reasons set out below, that proposition is rejected.
Neither our statutory nor our case law requires that when a personal injury claimant is represented by a lawyer, a check drawn in settlement of the claimant's claims, or in satisfaction of a judgment obtained by the claimant, must be made payable to the claimant and to the claimant's lawyer, and deposited in the lawyer's clients' funds account. In the absence of such a requirement, the receipt, deposit and distribution of such a check by a claimant's lawyer is a consensual matter between client and CT Page 7856 lawyer. Conversely, if a client refuses consent to such an arrangement, the check must be made payable to the client only.
In receiving, depositing and distributing personal injury settlement monies on behalf of a client, a lawyer acts as a defacto escrow agent for the client. While escrow agreements are often express and written, the absence of an express agreement (oral or written) does not change the nature of the principal/agent relationship, and the terms of an implied (unwritten and not express) escrow agreement are enforceable as to the lawyer-escrow agent.
The record in this case makes no reference to a written escrow agreement. The only term of an oral escrow agreement which is referenced in the record is the fact that Silver, ". . . at the client's direction disbursed the settlement funds to Mr. Jones without paying Safeco." (Record, Item-27). In short, Silver's handling of the settlement proceeds was governed by an escrow agreement between Jones and him, of which the only known express term is Jones' directive to Silver not to pay Safeco. Accordingly, if Silver had paid Safeco, he would have violated his escrow agreement with Jones.
If Silver had been unwilling to respect Jones' directive not to pay Safeco, it would have been Silver's obligation to notify Jones of that unwillingness before receiving the settlement proceeds on Jones' behalf, in order that Jones not rely, to his detriment, on the permissible presumption that Silver, his lawyer, would comply with his directive. If Silver had told Jones that he interpreted the Rule to compel him to pay Safeco from the proceeds, Jones could simply have advised Silver that the settlement proceeds were not to go through Silver's hands, but rather were to be paid directly to Jones. Thus, it appears that Safeco would have been reimbursed the amount of its lien from the settlement proceeds only if Silver had been deceptive with his client.
It is held that Safeco was not "entitled to receive" reimbursement of its no-fault payments from the settlement proceeds in Silver's hands. Ergo, Silver was not obligated, under the Rule, to pay any portion of the settlement proceeds to Safeco.
CONCLUSION
The appeal is sustained, and the reprimand issued by the Committee to Silver is vacated. CT Page 7857