[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant moves to strike both counts of the plaintiff's amended complaint. That complaint alleges, in the first count, that the defendant, a school bus transportation company, permitted the health insurance of the plaintiff, a recently terminated employee of the defendant, to lapse and be discontinued without providing the plaintiff notice of such cancellation or discontinuation as mandated by G.S. §38a-537(a). The second count alleges that such violation also constitutes an unfair trade practice under the Connecticut Unfair Trade Practices Act (CUTPA), G.S. Ch. 735a.
 I
As to the first count, the defendant contends that this count fails to state a cause of action because § 38a-537(b) is a penal statute rather than one generating a cause of action. The CT Page 2935-V court rejects this argument.
Subsection 38-a-537(b) indicates that an employer's failure to notify an employee of imminent termination of group health insurance coverage provided by that employer for the employee renders the employer "liable for benefits to the same extent as the insurer, hospital or medical service corporation or health care center would have been liable if coverage had not been cancelled or discontinued". Absent from this subsection are the words "fine" or "penalty". In contrast, subsection (a) of §38a-537 expressly states that any employer who fails to provide timely notice "shall be fined not more than one thousand dollars for each violation". (Emphasis added.) It is highly unlikely that the legislature would employ the word "fined" in one subsection and then substitute "liable" in the very next subsection if such words had equivalent meaning, viz. imposition of a fine. The use of the word "liable" itself implies civil liability. Nowak v.Nowak, 175 Conn. 112, 125 (1978).
Also, because subsection (a) explicitly penalizes the failure to notify, it would be duplicative to punish the same misconduct in subsection (b). A more rational reading of these sibling CT Page 2935-W subsections is that subsection (a) imposes a penalty while subsection (b) creates a compensatory remedy by way of a cause of action against the noncompliant employer. Finally, under the defendant's interpretation, the "fine" imposed by subsection (b) would be unlimited in amount and contingent only on the benefits lost by the cessation of coverage. Such an open-ended fine would be unique among penal statutes.
The court concludes that, while subsection (a) of §38a-537 is penal, subsection (b) is not.
 B
The defendant further contends that, even if § 38a-537(b) is not penal and does create a cause of action, that action can only be brought by either the insurance or labor commissioner and not by a private individual. The court also rejects this contention.
Section 38a-537(b) fails to specify who may bring suit to recover for the lost benefits. In other instances, the CT Page 2935-X legislature has specified such parties. For example, G.S. §31-72 states that an "employee or labor organization may recover, in a civil action," double damages for the failure to pay wages. That same statute also empowers the labor commissioner to "bring any legal action necessary" to collect and distribute such double damages to the offended party. The absence of similar language from § 38a-537(b) presents an ambiguity as to legislative intent on this point.
In § 38a-537(b), the phrase "shall be liable for benefits to the same extent as the insurer, [etc.]" could mean that the delinquent employer is liable to the same parties or for the sameamount. Again, the legislative intent is obscure as to who may sue the nonperforming employer.
The defendant claims that § 38a-537(b) must be read in conjunction with G.S. § 38a-8(a). Section 38a-8(a) sets forth the general duties of the insurance commissioner and states the commissioner "has all powers specifically granted, and all further powers that are reasonable and necessary to enable the commissioner to protect the public interest in accordance with CT Page 2935-Y the duties imposed by this title". The defendant asserts that this section vests the insurance commissioner with the exclusive right to enforce the liability provision of § 38a-537(b).
If the language of a statute is susceptible to alternative, conflicting interpretation, the court may look to extrinsic aids such as legislative history for guidance. Lopresto v. StateEmployees Retirement Commission, 34 Conn. App. 510, 517 (1994). Historically, § 38a-537(b), formerly § 38-262c(b), was first enacted in 1982 as part of P.A. 82-159. A review of this legislative history surrounding passage of P.O. 82-159 discloses no limitation regarding standing to enforce the employer liability law to the insurance or labor commissioners. Representative Martin Smith noted that "[t]his bill will provide protection to workers whose health insurance has been discontinued without their notification". 25 H.R. Proc., Pt. 8, p. 235. Clearly, the purpose of § 38a-537(b) is to protect individual employees from financial harm flowing from loss of health insurance without notice. Subsection 38a-8(a), on the other hand, speaks of the insurance commissioner's duties "to protect the public interest." (emphasis added). CT Page 2935-Z
Principles of statutory construction require courts to construe a statute to avoid thwarting its intended purpose. Statev. DeFrancesco, r235 Conn. 426, 436 (1995). The defendant has acknowledged that no statutory or regulatory provisions exist enabling the insurance or labor commissioner specifically to bring suit to recoup funds owed under § 38a-537(b) for employees. If, as the defendant contends, the legislature intended to restrict enforcement of § 38a-537(b) to public officers and avoid enforcement by private suit, it seems illogical and remiss for the legislature to have failed to voice that intention explicitly.
Under the defendant's logic, the absence of express authority of private individuals to sue under § 38a-537(b) negates standing for them to sue. According to this rubric, however, no one would be authorized to bring suit under § 38a-537(b) because that subsection fails to state specifically that anyone may sue to establish noncompliance. The absence of authority to vindicate the right created by the subsection would thwart the purpose of the statute. The defendant's construction leads to the CT Page 2935-AA absurd result that no one is empowered to redress the liability imposed by the statute. Construction of statutes which lead to irrational result must be avoided. Id.
The plaintiff's interpretation of § 38a-537(b) is that an employee may sue to establish the liability of his or her delinquent employer. This interpretation of implicit authority to sue makes sense. The private individual will be most directly and immediately interested in seeking recourse. The defendant can point to no factor which makes the employee's ability to enforce § 38a-537(b) inferior to that of either the insurance or labor commissioner.
If the legislature intended to compensate employees for loss of health insurance coverage without notice only through the intercession of a public official, it is reasonable to expect that the legislature would have affirmatively and expressly restricted standing to such public intermediaries. The omission of express restriction militates against this intention.
The court holds that § 38a-537(b) confers upon the CT Page 2935-BB employee allegedly injured by the lack of notice of discontinuation of health insurance a private cause of action against the delinquent employer. Consequently, the motion to strike the first count of the complaint is denied.
 II
As to the second count, the plaintiff claims that the defendant's violation of § 38a-537(a) constitutes an unfair trade practice and, therefore, a violation of CUTPA. Despite the plaintiff's argument to the contrary, the provisions of § 38-537 clearly pertain to and stem from the employer-employee relationship. Subsection (a) explicitly uses the phrases "for its employees" and "insured employee". Similarly, subsection (c) refers to deductions from "employees's wages" and "owed an employee". Finally, subsection (d) states that whenever "an employer" closes its doors certain eligibility for health insurance coverage inures to the "employee". Clearly, §38a-537 helps define the legal contours of the employer-employee relationship regarding health insurance. CT Page 2935-CC
The employer-employee relationship falls outside the meaning of "trade or commerce" for purposes of CUTPA liability. Quimby v.Kimberly Clark Corporation, 28 Conn. App. 660, 670 and 671 (1992). The plaintiff's attempts to distinguish the present claim from those proffered in Quimby, supra, are inapposite. The plaintiff's allegations concern the termination of group health insurance membership. Such membership is an emolument of employment with the defendant. There is no allegation that the defendant sold insurance or received commissions from the furnishing of membership eligibility to its employees. The holding of Quimby, supra, applies to the present case, and the motion to strike is granted as to the second count.
Sferrazza, J.