[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE (DOCKET ENTRY NO. 124)
The plaintiff concedes she was terminated by the defendant as a Pulmonary Function Technician Assistant on December 1, 1997, when her department was closed. She instituted this action on or about April 21, 1998, and asserted in eleven counts therein various employment claims — i.e., several statutory violations, breach of express and implied contract, breach of the covenant of good faith and fair dealing, promissory estoppel, negligent infliction of emotional distress, and negligent misrepresentation.
The history of the pleadings filed by the plaintiff thereafter is tortured. As to her Amended Complaint filed on April 26, 1999, Counts Five, Nine, Ten, and Eleven were struck by Nadeau, J. on June 22, 1999, and November 9, 1999. On June 18, 2001, Moran, J., in a lengthy decision, struck Counts One through Six and Nine through Eleven of the plaintiff's Second Amended Complaint. Ten days later, the plaintiff filed the Third Amended Complaint (the instant complaint) which, despite removal of Count Nine of the Second Amended Complaint (alleging the defendant's failure to provide her a copy of her personnel file) is pointedly similar to the allegations of the prior complaint.
The defendant has moved to strike Counts One through Six, Nine, and Ten of the Third Amended Complaint for those reasons it moved to strike the corresponding counts of the predecessor complaint, which counts were stricken by Moran, J. The defendant has asserted both in its memorandum of July 26, 2001, and its argument before this court on September 4, 2001, the absence of additional factual allegations which should suggest a result different than that reached by Moran, J. The plaintiff insists there are such new factual allegations and, thus, a different result should obtain.
A motion to strike tests the legal sufficiency of the allegations of a complaint to state a claim upon which relief can be granted.Peter-Michael, Inc. v. Sea Shell Associates, 244 Conn. 269, 270 (1998). In ruling upon such motion, the court is limited to the facts alleged in the complaint and must construe those facts most favorably to the plaintiff. Faulkner v. United Technologies Corp., 240 Conn. 576, 580
(1997). If the facts provable would support a cause of action, the motion to strike must be denied. What is necessarily implied need not be expressly alleged. Pamela B. v. Ment, 244 Conn. 296, 308 (1998). CT Page 14416
Count One alleges a breach of contract claim. The plaintiff asserts the defendant's personnel policy and procedure manual created an express contract which made her "not an at-will employee" (Paragraph 3) which required the defendant to provide her written notice of termination and adequate oral notice of termination, an unemployment notice on or around her termination, to pay her certain benefits upon termination, to offer her another position within the hospital and not revoke that offer once accepted by the plaintiff, to reinstate her to that second position once the accepted offer was revoked, to offer her yet a second position within the hospital, and to provide her with her personnel file (Paragraph 27). The defendant's failure to do such things, she asserts, constituted a breach of that express contract (Paragraph 28) and caused her damages.
A close examination of the assertions contained in Count One of the Second Amended Complaint and Count One of the Third Amended Complaint regarding the defendant's alleged breaches of contract establishes the very same claims are advanced in Paragraph 27 of both complaints, the single exception being that the instant complaint also asserts, in sub-section (k) of Paragraph 27, that the failure to provide her her personnel file also breached the claimed express contract. Count One of "the instant complaint, in response to Judge Moran's finding the plaintiff failed to allege she had anything other than an at-will employment (page 11 of the June 18, 2001, Memorandum of Decision), asserts she was not an "at-will" employee (Paragraph 3), an allegation not made in the Second Amended Complaint. This is, however, a mere conclusory allegation unsupported by any facts tending to establish the same. The plaintiff fails still to include any specific factual allegations concerning the formation and terms of the express contract she claims she had with the defendant.
The mere providing of a personnel policy and procedure manual to an employee does not convert an at-will employee to a contract employee nor is an employers's indication of an intent to provide future employment (as in the offer of another position here) binding as a contract. Gearyv. Wentworth Laboratories, Inc., 60 Conn. App. 622, 628 (2000). Nothing about the employer's offer of a clerical position (an offer revoked when the plaintiff failed to pass all portions of the written test applicable to that position) constituted an agreement definite and certain as to its terms and requirements so as to constitute a contract. See SuffieldDevelopment Associates Ltd. Partnership v. Society for Savings,243 Conn. 832, 843 (1998). There are no allegations which suggest other than an employment agreement terminable at the will of either party and, thus, no reason is presented to conclude other than as was concluded by Moran, J. — specifically, the plaintiff could be terminated for any reason so long as that reason was not violative of an important public CT Page 14417 policy. No such violation is alleged nor can it be applied to the hospital's closing of the plaintiff's department. The law of the case established in the prior court ruling continues to pertain and the purported new allegations contained in Paragraphs 3, 16, 21, and 26 do not give rise to an express contract since it is still the law of this state that an employment agreement of indefinite duration is an at-will employment arrangement. See Battista v. United Illuminating Co.,10 Conn. App. 486, 495 (1987). It is of no assistance to the plaintiff to assert she was provided the manual in question when nothing contained therein converts her employment of indefinite duration to a specific term or asserts that she can be terminated only for specified reasons.
Court Two of the Third Amended Complaint alleges the defendant breached an implied contract of employment created by the "[d]efendant's personnel policy, related documents and words, acts and conduct which set forth the terms and conditions of employment related to termination, notice of unemployment, severance pay, seniority rights, re-employment rights, vacation pay and benefits, testing and reinstatement and the plaintiff's provision of consideration for these benefits by becoming an employee and remaining an employee. . . ." (Paragraph 26) Precisely the same allegation is asserted in Paragraph 26 of the same count in the prior filed complaint. Indeed, the only difference between the two counts is, again, the insertion of the claim in sub-paragraph (k) of Paragraph 27 of the instant complaint that the defendant's failure to provide the plaintiff her personnel file constituted breach of an implied contract between the parties.
As with the prior count, the plaintiff asserts that paragraph 3 (which asserts she is not an at-will employee and that she was provided the referenced personnel policy), Paragraph 16 (which states she had accepted an offer of a clerical position), Paragraph 21 (which alleges the testing procedure she underwent for that position was not set forth in any procedure manual), and Paragraph 26 (as just above quoted) cures the defect of the prior complaint in stating sufficient facts to support a cause of action. No conclusory allegation the plaintiff is not an at-will employee accomplishes that objective. To sustain a cause of action based on the alleged existence of an implied agreement, the plaintiff has the burden of proving an employer has, by words or action or conduct, agreed "to undertake [some] form of actual contract commitment" under which the employee "could not be terminated without just cause. . . ." Torosyan v.Bohringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 15 (1995). "A contract implied in fact, like an express contract, depends on actual agreement." Coelho v. Posi-Seal International, Inc., 208 Conn. 106,111-12 (1988). "In order to support contractual liability, the defendants' representations must be sufficiently definite to manifest a present intention on the part of the defendants to undertake immediate CT Page 14418 contractual obligations to the plaintiff." Burnham v. Karl Gelb, P.C.,50 Conn. App. 385, 389 (1998), affirmed on other grounds, 252 Conn. 153
(2000).
In striking this count in the prior pleading, Moran, J. concluded it was apparent the plaintiff's assertions were insufficient to state a cause of action for breach of an implied contract because she failed "to allege that the defendant made any definite representations to her indicating its intention to enter into a contract with her." (Page 13) Her allegations, regarding the offer of a new position, that she had received a new security badge, uniform, and computer password "are not sufficient to show an implied contract." (Page 14) Nothing in the manual provided changes her employment status or supports a claim the manual made her an employee who could not be terminated at will or could only be terminated with specific benefits extended to her. No additional language in Count Two of this complaint addresses the prior defect; nothing supports a claim there was implied an agreement between these parties that the plaintiff could only be terminated for specified reasons or terminated only if a certain protocol were followed and/or specified benefits conferred — and that is so with regard to both her actual employment as a pulmonary technician or her proffered employment in a "business/clerical" position. The reliance upon the manual fails because it does not support a specific commitment by the defendant to this plaintiff. Nowhere, for example, is there the representation this employee — or, indeed, any person employed as a pulmonary technician or "offered" a "business/clerical" position (since this plaintiff was never employed in such position) — could be terminated only in a certain manner (as the plaintiff claims in her memorandum at page 9).
There being no meaningful distinction between the previously stricken Count Two and this Count Two, it is stricken.
Count Three of both the Second and Third Amended Complaints alleges a cause of action for breach of the implied covenant of good faith and fair dealing. The plaintiff points to the same Paragraphs 3, 16, 21, and 26 of the Third Amended Complaint (as above discussed); additionally, she claims the addition of paragraph 29 addresses the earlier defect which resulted in Judge Moran's striking of that count. Paragraph 29 reads:
 As a result of the express contract which included the terms of the Bridgeport Hospital Personnel Policy and Procedure Manual, an implied covenant of good faith and fair dealing existed between the Plaintiff and the Defendant whereby all parties understood that they were to abide by the contractual obligations, alleged in Counts One and Two, between the Plaintiff and the CT Page 14419 Defendant in good faith.
The assertion of an "express contract is merely conclusory language, the existence of which contract is denied by this state's decisional law which imposes the requirement of an agreement of specified terms and duration. In the absence of such specific terms and prescribed duration, it can hardly be argued the parties "understood" the nature or extent of any "contractual obligations", the breach of which would give rise to a cause of action for a breach of the implied covenant of good faith and fair dealing. Nor does the plaintiff's allegation her expectations (presumably regarding the manner of her dismissal) were "reasonable" or "justified" (as alleged in Paragraph 30) provide the requisite factual foundation for this cause of action in the absence of either an express or implied employment contract.
Connecticut law is clear that the existence of a contract between the parties is a necessary antecedent to any claim of breach of the duty of good faith and fair dealing. See Hopkins v. Titan Value Equities Groups,Inc., 252 Conn. 789, 793 (2000). Our Supreme Court has also stated that "[w]here employment is clearly terminable at will, a party cannot ordinarily be deemed to lack good faith in exercising this contractual right [to discharge at will]. . . ." Magnan v. Anaconda Industries,Inc., 193 Conn. 558, 572 (1984). It stands to reason that there cannot be stated this cause of action for the manner in which termination is accomplished or for the revocation of an offer of employment where the plaintiff is an at-will employee who fails to qualify for the position offered and where there is no allegation the defendant's conduct involved "some impropriety . . . derived from some important violation of public policy." Id.
Nothing new by way of a substantive assertion of fact having been added, the plaintiff makes no legitimate claim for a result at variance from that earlier obtained. Count Three is stricken.
Count Four of the Third Amended Complaint asserts a cause of action for promissory estoppel. The defendant asserts this count must fail because the plaintiff does not allege the defendant's making of any statements or representations restricting the termination of her employment and that a claim based on promissory estoppel is inconsistent with a claim based on the theory of contract. The plaintiff does not, however, specifically reference either an express or implied contract in this count (The term "reliance" is not an essential element of a contract cause of action while it is with regard to a claim for promissory estoppel.). Contrary to the defendant's assertions (page 14 of defendant's memorandum), Court Four does not allege the existence of an enforceable contract. The defect, however in the Fourth Count is that the plaintiff conclusorily CT Page 14420 states the Bridgeport Hospital Policy and Procedures Manual included "express terms and conditions which the Hospital represented to her it would abide by, and then failing to adequately inform her regarding the layoff, offering her the `Business/Clerical' position, authorizing her to get a new uniform and password, and other such actions would induce reasonable reliance on the part of the Plaintiff." Nowhere does the plaintiff point to language in the manual which committed to the plaintiff that the defendant would, for example, provide greater notice of termination than was provided her or' that, once provided the indicia of a new position (i.e., a badge and password and uniform), she could be terminated only for cause and/or with specified benefits. That failure to state facts supportive of her assertion is fatal and the Fourth Count is stricken.
Count Five alleges a cause of action for negligent infliction of emotional distress. The plaintiff alleges the employer breached its duty of reasonable care by intentionally withholding information with regard to the layoff and the clerical position, by offering her a position and then revoking that offer, and by failing to provide her health coverage information; she also asserts she was rudely treated by another employee during the termination process (Paragraph 30). What has been added to this count are the allegations a co-employee treated her — during and after the termination process — in an "inconsiderate, humiliating and embarrassing manner" (Paragraph 31), that she suffered emotional distress as a result of the defendant's failure to provide information regarding health coverage for herself and her daughter (Paragraph 32), and that the defendant knew or should have known this collective behavior "would result in a substantial likelihood of causing . . . emotional distress and physical harm (Paragraph 33)." Mere termination of employment is not in and of itself enough to sustain a claim for negligent infliction of emotional distress nor does it "transgress the bounds of socially tolerable behavior." Parsons v. United Technolooies Corporation, 243 Conn. 66, 88 (1997). In the words of another court, there must be evidence this plaintiff was terminated in a manner different from others or that it was done in a way "that would cause . . . more than the normal upset that would result from any termination of employment." Chieffalo v. Norden Systems, Inc.,49 Conn. App. 474, 480-81 (1993). Although the plaintiff asserts the co-employee's behavior was humiliating and embarrassing, etc., she does not support that conclusory statement with specific assertions of that employee's outrageous conduct nor does she assert a specific agreement to provide severance or vacation pay or other benefits, etc. Clearly it cannot be said to be socially unacceptable or flagrantly offensive to revoke the offer of a clerical position when she failed to pass a written test which she does not claim was unrelated to that job profile. Though the plaintiff has expanded upon the allegations in the previously CT Page 14421 stricken Count Six, these new assertions are not sufficiently substantive to support this cause of action. An at-will employee is not immune from termination nor is that employee assured the manner of termination will be either pleasant or socially acceptable. Having been notified more than one month before her termination that her department would be closing and having been notified in November she would be terminated in December, it cannot be concluded she was treated unreasonably. The fact that such notice was oral-as opposed to written — accomplishes nothing for the plaintiff absent a specific agreement to provide written notice. Though it is alleged she had a "special relationship" with the defendant, no facts support that allegation so as to give rise either to justified higher expectations on her part or to additional obligations on the part of her employer. Count Five fails for that reason and it remains stricken.
Count Six asserts a cause of action for negligent misrepresentation. With regard to the prior asserted conduct by the defendant, it asserts the employer "misrepresented . . . certain crucial facts with respect to her layoff and misrepresented to the Plaintiff that she had a new position. . . ." (Paragraph 29) She has alleged in Paragraph 30 the defendant "made misrepresentations of specific facts . . . as to the layoff and recall provisions of the Bridgeport Hospital Policy and Procedure Manual that it knew or should have known at the time they were made were false and misleading" statements. "[F]alsity is an essential element of a negligent misrepresentation claim, and [the plaintiff] bears the burden of demonstrating that the defendants made certain representations . . . that were in fact untrue." Daley v. Aetna Life Casualty Co., 249 Conn. 766, 792-93 (1999). What, specifically, were the facts stated by the defendant which, because proven untrue, constitute "misrepresentations"? The Third Amended Complaint provides no clue. A representation of the potential for continued employment — even when accompanied by a badge and password and new uniform — is not a representation she would be continued in that position for any definitive period particularly when, as here, the plaintiff failed to pass the required employment test for that position. Again, nothing of substance is added to this new complaint and her right to rely on the continuation of her new position under the circumstances here presented are not established.
To the extent this count relies on the assertion her personnel file was not provided, the claim is governed by Connecticut General Statute §31-128g which, inter alia, provides the employer shall, within a reasonable time after receipt of the employee's written request, provide the employee his/her personnel file "provided such request reasonably identifies the material to be copied . . ." The remedy for the employer's failure to comply with this statute is, as per Connecticut General CT Page 14422 Statute § 31-2 (a), to file a complaint with the Labor Commissioner. See also Turner v. Connecticut National Bank, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 279671 (October 10, 1991, Spear, J.) (5 Conn. L. Rptr. 119). Our decisional law makes clear the doctrine of primary jurisdiction dictates the employee's claim be heard first by the Labor Commissioner whose expertise in this specialized area of the law is unquestioned (See the cases cited in Judge Moran's Memorandum of Decision of June 18, 2001, regarding the Second Amended Complaint.). No authority for the proposition this plaintiff has a private cause of action under Connecticut General Statute § 31-128g is provided; nor is there the allegation in Count Six this plaintiff made awritten[1] request the employer provide her her personnel file (much less that such written request particularized the documents she wished) or that she had exhausted the administrative remedy available to her when the employer did not respond to her.
For all of the above reasons, Count Six is stricken.
Count Nine alleges a violation of Connecticut General Statute §38a-537 which requires group health care plan providers to provide "notice of the cancellation or discontinuance of such insurance" in a prescribed manner to terminated employees. The violation of this statute may result in the assessment of fines by the Labor Commissioner. In Paragraph 30 of her complaint, the plaintiff alleges "the defendant violated sections (a), (b), (c), and (d) of § 38a-537 and violated provisions not directly or indirectly applied to employee benefit plans covered under Title 1 of the Employee Retirement Income Security Act." The inclusion of this language in the Third Amended Complaint (Count Ten of the Second Amended Complaint did not specifically cite to sections within the statute.) is surprising in view of Judge Moran's conclusion, with specific citations to a federal advisory opinion and Connecticut case law in support thereof, that subsections (a), (b), and (c) of §38a-537 are preempted by ERISA insofar as they are applied, directly or indirectly, to employee benefit plans covered by Title 1 of ERISA. See pages 31-33 of the court's memorandum of decision. That remains the law of the case which this court shall not disturb. The plaintiff, in her memorandum of law in support of her objection to this motion, asserts, at page 27, she "has specifically alleged that she is not making allegations which are related to an employee benefits plan covered by ERISA." The court rejects that conclusion. Clearly subsections (a), (b), and (c) directly "relate to" employee benefit plans covered by ERISA for the reasons stated in Judge Moran's memorandum of decision. The plaintiff offers no insight as to what the intended reference to "provisions not directly or indirectly applied to employee benefits plans covered under Title 1 of the Employee Retirement Income Security Act." Sub-section (d) of § 38a-537 by its terms is inapplicable because Bridgeport Hospital CT Page 14423 has not ceased "doing business." If, as the plaintiff implies, there are portions of our statute which are not applicable to employee benefit plans covered by ERISA — and are therefore not preempted by ERISA — it is the plaintiff's burden to identify those portions. and articulate her argument. This she does not do. Instead, in her memorandum (as opposed to her complaint), she cites to Superior Court decisions which find no preemption — not one of which is applicable to the instant facts (and none of which the plaintiff provides the court as required by our rules of practice). ERISA applies to all non-governmental employee benefit plans maintained by an employer engaged in commerce.29 U.S.C. § 1002, 1003. The plaintiff does not allege Bridgeport Hospital benefit plans are not covered by ERISA nor does she identify the portions of Connecticut General Statute § 38a-537 not preempted by ERISA and violated by this employer.
The plaintiff has cited to three (3) Superior Court cases in support of her argument that her cause of action for violation of Connecticut General Statute § 38a-357 is not preempted by ERISA. The court has examined these cases and notes no one of them discusses this issue specifically. Most informative, however, is the decision in Benway v.Laidlaw Transit, Inc., No. CV95 0050910 5, 1996 Ct. Sup. 935,18 CLR 634, judicial district of Windham (Sferrazza, J.), April 12, 1996. The court there concludes that subsection (a) of the Connecticut General Statute § 38aZ-537 is penal while subsection (b) is not and creates a "compensatory remedy by way of a cause of action against the noncompliant employer." Id. at 2935. It does not, as stated, consider the issue raised by defendant — that of preemption. For the reasons above stated, this court concludes federal legislation preempts this state statute, thereby depriving the plaintiff of a private cause of action to be asserted in state court.
Count Nine is stricken.
Count Ten alleges the employer failed to provide notice of the termination of health care benefits and thereby violated29 U.S.C. § 1161 et. seq. ("COBRA") "over which the Superior Court for the State of Connecticut has jurisdiction." See Paragraph 31. The quoted portion of that allegation is the only addition to the allegations made in Count Eleven of the Second Amended Complaint, which count was previously stricken by Moran, J. as preempted by our federal courts. See Memorandum of Decision, pp. 34-35. As the defendant correctly states in its memorandum of law in support of this motion, the mere assertion this court has jurisdiction with regard to a claimed violation of a federal statute cannot create such jurisdiction. The blatant assertion in the plaintiff's memorandum (at page 29) that this court has concurrent jurisdiction under Section(a)(1)(B) of 29 U.S.C. § 1132 is irrelevant CT Page 14424 to the claim of jurisdiction under § 1161. While those suits in which concurrent jurisdiction is recognized are in fact civil actions brought by health care participants seeking to enforce their rights and to recover benefits under the plans (as this plaintiff seeks to enforce her claimed right to continued health care benefits), "[s]uits seeking to enforce the penalty provisions of COBRA found at 29 U.S.C. § 1132 (c) are within federal jurisdiction of the federal district court." Memorandum of Decision, Moran, J., at p. 35. The inconsistency between the plaintiff's claim of state jurisdiction in her complaint (based on29 U.S.C. § 1161) and her claim for state court jurisdiction in her memorandum (based on 29 U.S.C. § 1132) is indicative of the quandary created by the absence of the structural or legal integrity of her reasoning. The penalty provisions of COBRA (29 U.S.C. § 1161 et. seq.) are invoked in Paragraph 32 of Count Ten. Her claim therefore is not solely to recover benefits and/or to enforce her rights under the terms of the hospital's plan nor is it solely to clarify her rights to future benefits under the terms of the plan. Under Duncan v. JuniorAchievement, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 335878 (Skolnick, J.), 19 Conn. L. Rptr. 669, 671, there is not concurrent jurisdiction and the plaintiff cites no legal authority for the contrary assertion.
Count Ten is stricken.
CONCLUSION
Counts One through Six, Count Nine, and Count Ten are stricken in their entirety.
B. J. SHEEDY, JUDGE